UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LOUIS DREYFUS COMPANY SUISSE, S.A., :

          *Plaintiff*,        :

– against –        :

JOHN DOE,        :
          *Defendant*.
------------------------------------------------------------x

Civil Action No.: 1:24-cv-6850

**COMPLAINT**

Plaintiff, Louis Dreyfus Company Suisse SA ("LDC" or "Plaintiff") as and for its complaint against defendant, John Doe ("Defendant"), alleges as follows:

### Introduction

1. This is a civil action for damages against Defendant arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), 18 U.S.C. § 1962(a) ("RICO") and the common law claim of fraud in the inducement.

### The Parties

2. Plaintiff is a Swiss corporation, with a place of business in Geneva Switzerland. Plaintiff is part of Groupe Louis Dreyfus S.A., one of the largest global agricultural commodities businesses. Plaintiff regularly purchases, trades, and exports sugar in the international market.

3. Upon information and belief, Defendant controls a JP Morgan Chase ("Chase") Bank account identified by account number 896019699. Plaintiff has conducted a reasonable but thus far unsuccessful search to determine the true identity of Defendant, sued herein as John Doe. Chase Bank should be able of provide the Name and Address of Defendant, who is a customer of the Bank.

### Jurisdiction and Venue

4. This is a civil action arising under 18 U.S.C. § 1030 ("CFAA"), 18 U.S.C. §

1962(a) ("RICO"), and common law fraudulent inducement. Any non-federal claims alleged in this Complaint are so related to the claims within the original jurisdiction of this Court such that they form part of the same case or controversy. This Court has original subject-matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the non-federal claims pursuant to 28 U.S.C. § 1367(a).

5. This Court has personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. 302(a)(1) as Defendant transacted business in New York and this cause of action arises from those transactions. <u>Indosuez Int'l Fin. B.V. v. Nat'l Res. Bank</u>, 98 N.Y.2d 238, 247 (2002) (Personal Jurisdiction found under C.P.L.R. 302(a)(1) where parties made transfers of funds through New York banks).

6. Pursuant to 18 U.S.C. § 1391(b), venue is proper in this judicial district where a substantial part of the events or omissions giving rise to the claim herein occurred. Alternatively, venue is proper in this judicial district because there is no district in which this action may otherwise be brought, and the Defendant is subject to the court's personal jurisdiction with respect to this action.

## FACTS

7. On or about March 13, 2023, Plaintiff, LDC, contracted to purchase 2,500 metric tons of refined sugar from Mexican-based vendor Ingenio Plan De Ayala S.A. DE C.V. ("Ingenio").

8. On March 22, 2023, LDC and Ingenio were arranging payment for the sugar with two SWIFT transfers totaling $2,078,454. The first payment was to be for $1,582,373 and the second payment was to be for $491,081.

9. For this purpose, LDC communicated with Ingenio using email addresses under

Ingenio's legitimate web domain, "[name]@santos.com.mx."

10. However, on March 26, 2023, upon information and belief, Defendant registered a confusingly similar domain, "www.santos-mx.com", which mimicked Ingenio's legitimate web domain ending "santos.com.mx".

11. Upon information and belief, Defendant used the domain it registered – www.santos-mx.com – to create email accounts deceptively similar to Ingenio's legitimate email addresses with the intent to deceive LDC.

12. Prior to March 29, 2023, all correspondence between LDC and Ingenio was with legitimate Ingenio employees.

13. On March 29, 2023, Defendant began impersonating Ingenio employees by corresponding with LDC from the deceptive email addresses, ending in "[name]@santos-mx.com," with the intent to deceive LDC and spoof legitimate Ingenio email addresses.

14. On March 29, 2023, Defendant emailed LDC, falsely using the names of Ingenio's Director of Logistics and Exports, Luis Troncoso, and three other Ingenio employees, attaching a fake invoice directing LDC to make payment to Chase Bank account number 8969019699, an account controlled by Defendant.

15. On April 3, 2023, unaware that LDC was no longer communicating with Ingenio because of Defendant's deception, LDC initiated a transfer totaling $1,587,373 to Defendant's Chase Bank account.

16. LDC made the April 3, 2023 transaction through SWIFT using Deutsch Bank AG, located in New York, New York, as its intermediary bank and JP Morgan Chase Bank, located in New York, New York, as its correspondent bank.

17. Chase Bank's internal security mechanism flagged this transaction and stopped

the transaction before the funds reached Defendant's Chase Bank account.

18. Upon information and belief, this transaction was flagged because LDC named the transfer beneficiary as "Ingenio Plan De Ayala S.A. DE C.V." (without the word "Group" at the end) and the beneficiary name on Defendant's Chase account was "Ingenio Plan De Ayala S.A. DE C.V. Group".

19. On April 3, 2024, Defendant conformed the beneficiary name on its Chase Bank account to "Ingenio Plan De Ayala S.A. DE C.V."

20. On April 6, 2024, Defendant initiated a second payment for $491,081 to Defendant's Chase Bank account.

21. LDC remained unaware that communications directing payment to this account were from Defendant and not Ingenio employees.

22. LDC completed the April 6, 2023 transaction through SWIFT using Deutsch Bank AG, located in New York, New York, as its intermediary bank and JP Morgan Chase Bank, located in New York, New York, as its correspondent bank.

23. The April 6, 2023 SWIFT transfer successfully deposited $491,081 into Defendant's Chase Bank account.

24. Defendant, by reason of its above-described deception, received, transferred and has retained $491,081.

25. On April 19, 2023, LDC discovered it had been defrauded when an Ingenio employee, whose email was not intercepted by Defendant, reached out to LDC having received no payment for the sugar.

26. LDC promptly contacted Chase Bank to reverse the payment.

27. Chase Bank informed LDC that the account no longer contained the transferred

4

{NY262669.2 }

funds.

28. LDC has thus far been unable to identify the Defendant by means other than their Chase Bank account used to perpetrate this fraud.

29. LDC has been unable to trace or retrieve funds that were fraudulently transferred to Defendant.

## CAUSES OF ACTION

### FIRST COUNT

### VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)

30. LDC incorporates by reference the allegations contained in paragraphs 1 through 29 above.

31. Defendant's unauthorized access of LDC's email system with intent to defraud constitutes a violation of the CFAA, 18 U.S.C. §§ 1030(a)(2) and 1030(a)(4).

32. LDC also maintains this Civil Action Pursuant to 18 U.S.C. § 1030(g) which in relevant part provides that "any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."

33. Defendant violated the CFAA, 18 U.S.C. § 1030(a)(2) by intentionally accessing a protected computer without authorization or in excess of any authorization and thereby obtained information from the protected computer in a transaction involving an interstate and/or foreign communication.

34. The CFAA defines "protected computer" as, *inter alia*, a computer "which is used in or affecting interstate or foreign commerce or communication," 18 U.S.C. § 1030(e)(2)(B), a definition that has been interpreted to encompass any computer with an internet connection. *See*

*United States v. Yucel*, 97 F.Supp. 3d 413, 418-19 (S.D.N.Y. 2015).

35. The statute defines the term "exceeds authorized access" as the "means to access a computer with authorization and to use such access to obtain or alter information in the computer that the assessor is not entitled to obtain or alter." 18. USC. § 1030(e)(6).

36. Defendant "exceeded authorized access" since he lacked any authorization to access LDC's computers and email systems.

37. The email exchange between LDC and Defendant constitutes "a transaction involving an interstate or foreign communication."

38. Defendant violated the CFAA, 18 U.S.C. § 1030(a)(4) by knowingly and with the intent to defraud, accessing a protected computer by exceeding authorized access and by means of such conduct furthering the intended fraud and obtaining something of value.

39. Defendant's conduct has caused a loss to Plaintiff valued at $491,081.

40. Plaintiff has suffered damages resulting from Defendant's conduct and seeks compensatory damages pursuant to 18 U.S.C. § 1030(g).

## SECOND COUNT

### VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO" 18 U.S.C. § 1962(a))

41. LDC incorporates by reference the allegations contained in paragraphs 1 through 40 above.

42. Pursuant to 18 U.S.C. § 1964, a litigant has a private right of civil action for injuries "by reason of [18 U.S.C. § 1962]."

43. 18 U.S.C. § 1962(a) states that "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity… to

{NY262669.2 }

use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

44. Here, Defendant directly received income resulting from the successful transfer of $491,081 to Defendant's bank account derived from a pattern of "racketeering activity."

45. Defendant conducted a pattern of racketeering activity, as defined by 18 U.S.C. § 1961(1)(B), through devising a scheme indictable under 18 U.S.C. § 1343 to defraud LDC into sending money on more than one occasion by means of false or fraudulent pretenses and representations, thereby causing funds to be transmitted by means of wire interstate or foreign commerce, writings for the purpose of executing such scheme.

46. Plaintiff was defrauded out of money in an amount of $491,081 as a direct and proximate result of Defendant's false pretenses.

## THIRD COUNT

### FRAUD IN THE INDUCEMENT

47. "To prove fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Bridgestone/Firestone v. Recovery Credit Servs., 98 F.3d 13, 19 (2d Cir. 1996) (citations omitted).

48. Defendant created a website domain and spoofed Ingenio's emails with the intent of using such email accounts to deceive LDC and swindle it into transferring money to Defendant's Chase Bank account.

49. Defendant always knew their misrepresentation was false.

50. LDC reasonably relied on Defendant's misrepresentation and was induced into transferring funds, which Defendant was not entitled to receive, to Defendant's Chase Bank account.

51. Plaintiff suffered economic harm in the amount of $491,081.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against Defendant for the following:

(a) Awarding compensatory and punitive damages in favor of Plaintiff for all damages sustained a as result of Defendant's wrongdoing, in an amount to be proven at a trial.

(b) Awarding Plaintiff's costs and attorneys' fees incurred in connection with this matter; and

(c) Awarding Plaintiff such other relief as this Court may deem just and proper.

Dated: New York, New York
September 11, 2024

                        HILL, BETTS & NASH LLP

By:   /s/ James D. Kleiner
       James D. Kleiner
       *Counsel for*
       *Louis Dreyfus Company Suisse S.A*
       14 Wall Street, Suite 5H
       New York, NY 10005
       Tel. (212) 589-7517
       Fax: (212) 466-0514

{NY262669.2 }